# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TOBY VINCENT BERRYHILL

    Plaintiff,

v.

PUBLIX SUPER MARKETS, INC.

    Defendant.          /

## COMPLAINT

Plaintiff, TOBY VINCENT BERRYHILL ("Plaintiff"), by and through his undersigned attorney, hereby files his Complaint and sues Defendant, PUBLIX SUPER MARKETS, INC. ("Defendant" and "Publix") and alleges as follows:

## INTRODUCTION

1. This is an action for damages, declaratory, and injunctive relief by Plaintiff against PUBLIX SUPER MARKETS, INC. for age discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as well as for retaliation under the same, and this Honorable Court's supplemental jurisdiction to cover age discrimination under the Florida Civil

Rights Act of 1992 ("FCRA"), and for retaliation under Florida's Private Whistleblower Act, Florida Statute §§448.101.104 ("FPWA").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Title VII of the Civil Rights Act of 1964.  The Court's supplemental jurisdiction is invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367 to address the claims under the Florida Civil Rights Act of 1992 ("FCRA"), and for Florida's Private Whistleblower Act, Florida Statute §§448.101.104 ("FPWA").

3.    Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(b), in that the Defendant maintains offices within this judicial district, and carries on commerce with citizens of this judicial district at an open place of business located within this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

4.    Plaintiff is a sixty-six (66) year old male, sui juris, and, at all times material to this action, and was a resident located in part of Polk County, Florida and for the entirety of the time listed in the complaint he worked for Defendant out of four locations, two located in Polk County and two located in Hillsborough County.  Plaintiff is a covered employee for purposes of the Florida Civil Rights Act.

5. Defendant is a Florida Corporation authorized to conduct business in the State of Florida and registered through the Florida Secretary of State. Defendant is a large chain of supermarkets and the venue of this action is properly placed in Tampa Division as Plaintiff worked for Publix in two Polk County locations and two Hillsborough County locations. At all times material to the complaint, Defendant maintained commercial operations within the state of Florida, specifically in Hillsborough and Polk Counties, as well as other offices located throughout the state. The majority of the retaliation and discrimination that Plaintiff faced occurred while he was located in Hillsborough and Polk Counties. Defendant is a covered employer pursuant to Florida Statutes § 760.02(7) as Defendant is and was employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

6. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer emotional distress, mental anguish, embarrassment, and humiliation.

7. Declaratory, injunctive, legal, punitive and equitable relief are sought pursuant to the laws set forth above together with attorneys' fees, costs, and damages.

8.     All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.  Plaintiff has filed a complaint with the Florida Commission on Human Relations and Equal Employment Opportunity Commission on December 19, 2025, and has timely filed this complaint following a receipt of the Notice of the Right to Sue issued December 29, 2025.  Plaintiff has complied with all conditions precedent to jurisdiction under the FCRA and EEOC in that he filed his Charge of Discrimination with the FCRA and EEOC within 300 days of the unfair employment practices alleged in this Complaint; Plaintiff has filed this suit within 90 days of receiving a Right to Sue notice; and Plaintiff is filing this Complaint within the FCRA's four (4) year statute of limitations for the alleged discriminatory acts. Thus, all administrative prerequisites have been satisfied and this suit is timely filed.

## GENERAL ALLEGATIONS

9. Plaintiff is a member of a protected classes under the FCRA and Title VII as he is over the age of forty 40 years old.  The discrimination that Plaintiff faced while working at Defendant is limited to his protected class as an elderly employee over 40.  Plaintiff is sixty-six (66) years old.

10. Plaintiff began working for Publix as a deli associate or about July 2014 and went on to hold multiple positions at different locations.   Ultimately, Plaintiff

was transferred to a location in Polk County where he worked as a Liquor Specialist making around $18.00 an hour.  Throughout his employment Plaintiff was able to perform the essential functions of his job duties and responsibilities, and at all relevant times Plaintiff did perform his job at satisfactory or above-satisfactory levels. Every work performance review received by Plaintiff stated that he "Exceeds or Meets Expectations" and he never received a performance improvement plan while working with Defendant.  This solid work performance over twelve years clearly shows that Defendant was qualified to perform the job in question.

9. As an older worker, Plaintiff would occasionally hear derogatory language and experienced discrimination while working for Publix, but he did not personally feel it reached a level necessary to report until he was assigned to the Lake Miriam location at some point in July 2023.  Whether this was due to increased levels of age discrimination at the particular location, due to the natural progression of his own physical aging or a combination of the two, from this point on at the age of sixty four (64) years of age Plaintiff began to experience ageism from Defendant at levels he felt necessary to report.

10. Upon his transfer to Lake Miriam, Plaintiff began to be repeatedly called the derogatory slang "nickname" of "old man" and "sleepy" rather than his name. Insulting jokes regarding his age, lack of physical abilities, his alleged need for

naps and adult diapers and other issues associated with negative stereotypes of older workers. Most of these derogatory names and jokes came from Defendant's agents at the management level rather than equivalents to Plaintiff, in particular Josh Kline and Clay Jenkins were the most hostile and aggressive with the purposeful insults and they occurred on most days Plaintiff worked with the individuals. Plaintiff did not invite this constant derogatory language or treat it as inconsequential "banter", the purposefully insulting negative stereotypes hurt Plaintiff's chances for promotion and raises especially as they came from members of management. Plaintiff repeatedly complained about this hostile work environment to multiple levels of management and human resources and nothing was ever done. In fact Josh Kline and Clay Jenkins were promoted by Defendant and given pay raises despite their misconduct and overt ageism.

11.    Plaintiff was singled out for this ageism as he was the oldest individual in the grocery department at his location performing physical labor. Other older individuals would work in customer service as a cashier or bagger and were segregated from the grocery department. Defendant's now hostile work environment threatened Plaintiff's ability to not only get payraises and promotions but the continued existence of his position.

12.    The Lake Miriam location was closed at some point in July 2024 in order to tear down the building and reopen it later as a new building. Plaintiff was

transferred to a new location in Grove Park which was also located in Polk County. Before the Plaintiff was transferred, Josh Kline was promoted to assistant store manager despite Plaintiff's complaints of the hostile work environment he was creating.  Clay Jenkins was transferred to the same location as Plaintiff at Grove Park where he continued the hostile work environment if not increased the volume and intensity of the derogatory language.  Plaintiff continued to feel humiliated and demeaned by Defendant's ageism as well as personally threatened as his livelihood was directly tied to Defendant's management and human resources perception of his physical abilities which were now constantly being challenged daily in stereotypical "jokes" and nicknames.

13.    In December 20, 2024, Plaintiff received a written warning for working off the clock for twenty eight (28) minutes over a three (3) month period of review.  This warning was not due to a legitimate work interest but in order to harass and start a pretextual termination process to eliminate one of their oldest employees in a physically-challenging position.  It was not uncommon for elderly workers to work beyond their scheduled hours and at other employers are frequently required to do so.  Yet despite such a minor accumulation of violations according to Publix itself (a grand total of twenty-eight (28) minutes allegedly worked as overtime on the clock as well as off the clock), Publix skipped a level in its progressive discipline process and failed to issue a verbal warning, going

straight to a written warning with promise of termination for future violations. Plaintiff complained to Defendant's human resources that this alleged discipline was just pretextual retaliation for his complaints to management about the ageism but nothing was done to reverse the discipline.

14.    After this pretextual written warning, the stereotypical ageist comments and "jokes" continued to be a daily humiliation for Plaintiff despite repeated complaints to multiple levels of management and human resources where nothing was done.  No investigations into Plaintiff's complaints of the hostile work environment occurred as it was Publix's management who were the worst actors in it.  When a manager was challenged for their active involvement in the ageism, the manager in question never apologized to Plaintiff nor triggered an official investigation.  When Plaintiff complained to human resources, they promised to speak to the individuals in question but Plaintiff saw no evidence that this was occurring.

15.    At some point in  January 2025, Plaintiff started the health care process of seeking treatment for benign prostatic hyperplasia (BPH), otherwise known as an enlarged prostate.   After numerous health care visits and tests over the next few months, Plaintiff was eventually scheduled for a surgical procedure on June 17, 2025 called aquablation which uses robotics, ultrasound and a waterjet "knife" to remove portions of the prostate.  According to the aquablation.com

website, in the US the current out of pocket costs for the procedure for an individual without insurance is $9,000 to $15,000 depending upon clinic location and complications from the individual.  Publix was aware of the planned surgery and Plaintiff had scheduled approximately a week off for recovery.

16.    After numerous complaints from Plaintiff regarding the ongoing hostile work environment and derogatory ageist jokes leading to his perpetual humiliation at the worksite, the next major incident was Publix deciding to terminate Plaintiff for pretextual reasons.  On June 5, 2025, only 12 days before Plaintiff's scheduled surgery, Publix terminated Plaintiff for the pretextual reason of allegedly working off the clock for eighteen (18) minutes (while finding no additional overtime minutes) on May 23, 2025.  According to Publix's alleged "investigation", Plaintiff clocked out on May 23, 2025 and then returned to work for a total time of eighteen (18) minutes where he was filmed "punching something into a calculator."  In fact, Plaintiff's location in the separate liquor store from the main supermarket was approximately a two minute walk in one direction from the separate liquor store to the main supermarket where the clockout stations were located.  Therefore four minutes of this alleged off the clock time occurred in the walk over and back.

17.    On May 23, 2025, the person relieving Plaintiff was late and by the time she finally showed up she warned Plaintiff that he did not have time to

balance the books before his scheduled time ended so the Plaintiff dropped all of his responsibilities and went to the main supermarket locations to clock out as Publix did not have a clockout location in the liquor store where Plaintiff worked. After a few minutes of clocking out and saying his goodbyes at the main supermarket, Plaintiff returned to the liquor store in order to gather his personal items.  Plaintiff did not "return to work" by balancing his till, moving boxes, cleaning shelves, helping customers or any other type of work responsibilities upon arriving at the liquor store, instead he gathered personal items, said his goodbyes to the relieving employee and spent a handful of minutes balancing his personal checkbook on a hard steady surface as it was on or near the last day of payroll which is when Plaintiff would handle his own personal finances.  Publix does not ban employees from visiting its locations on personal time, so to consider this personal time as "work off the clock" for purposes of termination is mere pretext for a retaliatory firing for Plaintiff's complaints about the hostile work environment.

18.    No reasonable employer would consider these two minor examples of alleged misconduct a terminable offense under a progressive disciplinary policy. Taken wholly at the best possible interpretation for Defendant, Plaintiff was accused of working off the clock twenty eight (28) minutes over a three month period, before an alleged final incident of working eighteen (18) minutes off the

clock for the benefit of Publix (constituting a grand total of forty six (46) minutes allegedly worked off the clock for the benefit of Publix for which Plaintiff requested no pay). Meanwhile, Publix had no evidence to deny Plaintiff's allegations that he was not working off the clock on May 23, 2025 but merely spending a few minutes at Publix locations where he worked and clocked in at performing personal activities such as removing his own personal items to take home for the day and spending a few minutes balancing his checkbook before going to a bank. Publix employees are not banned from visiting their work locations while off-duty. As such, Publix's termination was purely out of retaliation in support of its ageist hostile work environment purposefully fostered and encouraged by its management and ignored by its human resources department.

19.    Plaintiff has several comparators of younger employees being given the benefit of Publix's progressive disciplinary process while Plaintiff was denied its proper use solely due to his protected class of being an elderly worker. Sean Vanloan who Plaintiff viewed as in his late 20s/early 30s who had multiple written warnings for leaving in the middle of shifts without authorization as well as others for insubordination. Cole Strickland who Plaintiff viewed as in his late 20s/early 30s who had over seven written warnings for a variety of issues including violations of the attendance policy. Benjamin Field who Plaintiff viewed in his

mid to late 30s who had multiple written warnings for a variety of issues including attendance issues.  Benjamin Field was apparently eventually terminated after Plaintiff but not until he had accrued a substantial number of disciplinary issues. The exemplar which most demonstrates the obviousness of the pretext behind Plaintiff's termination is that Colton Shows worked off the clock for a large number of hours and upon Publix learning about the issue they paid him approximately $15,000.00 in back wages and he was not terminated.  Colton Shows who Plaintiff viewed in his early 30s was an assistant grocery manager which is a position Publix typically pays between $21 and $26 an hour meaning his back wages paid by Publix for time worked off the clock was at or over thirty four thousand, six hundred twenty (34,620) minutes of off the clock work without being terminated compared to Plaintiff's alleged forty six (46 minutes).

20.    Similarly, Plaintiff did not observe individuals outside his protected class as an elderly worker openly being mocked for conditions, stereotypes or jokes related to their age.

21.    As a result of the pretextual termination, not only did Plaintiff lose his employment but he was denied reimbursement for large numbers of hours of unused paid time off (Plaintiff believes this to be two hundred sixty (260) hours of sick leave and one hundred twenty (120) hours of vacation time).  Moreover, Plaintiff was not able to undergo the planned surgery on June 23, 2025 as he would

have had to pay $9,000 to $15,000 out of pocket rather than use Publix's insurance. This surgery was not able to be rescheduled until an upcoming appointment with his new insurance's primary care which will not occur until August 2026 at the earliest.  Plaintiff continued to suffer pain and humiliation from issues associated with the ongoing untreated enlarged prostate due to the delay caused by Defendant's retaliatory actions.

22.    A Right to Sue letter was issued on December 29, 2005. The instant complaint to sue was subsequently filed within 90 days of the Notice of Right to Sue, and is therefore timely under the Florida Civil Rights Act and Title VII. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies or these conditions have been waived or otherwise excused.

23.    Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay said attorney a reasonable fee for his services. Plaintiff requests said attorneys' fees as damages in this lawsuit.

## COUNT I
### *Age Discrimination in Violation of FCRA*

24.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 23 as if set forth in full herein.

25.    The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against age discrimination under the FCRA, Chapter 760, Florida Statutes.

26.    Defendant through its agents in management positions exhibited such discriminatory comments and actions that they were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff. No one outside of Plaintiff's protected class as an elderly worker were openly ridiculed and mocked by Defendant's management team for their age.  Defendant's human resources protected its management team from repercussions from their discriminatory actions.  Moreover, Plaintiff provided multiple exemplars of individuals outside of his protected class as an elderly worker which did not face the accelerated disciplinary actions from Publix for allegedly engaging in what was at most relatively benign errors of judgment by allegedly working off the clock for Publix's benefit.  The comments and actions by Defendants agents, employees and management affected the terms, conditions, and privileges of Plaintiff's employment and ultimately ended in the loss of his position.

27.    The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

28.    Plaintiff has suffered damages as a result of Defendant's illegal conduct toward her.

29.    The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Publix, to deter it, and others, from such conduct in the future.

30.    A plaintiff establishes the prima facie case "by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." Plaintiff has established all four prongs as he is 1) clearly within the suspect class of elderly workers, 2) that he was subjected to discriminatory actions described above which ultimately led to his pretextual termination, 3) that he has twelve years of experience in the job and other similar positions within Publix and received at or above average marks and 4) that other younger individuals were not subjected to the same discrimination as one individual had tens of thousands of hours not on the clock and was not terminated which he had a grand total of allegedly forty six minutes over months.

30.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a.     Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.     Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, front pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.     Enter judgment against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.     Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

e.     Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

f.     Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

## COUNT II
### *Retaliation in Violation of FCRA*

31.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 23 as if set forth in full herein.

32.    The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against retaliation under FCRA.

33.    The Defendant pretextually terminated Plaintiff's employment, after he engaging in statutorily protected activity of complaining to human resources and upper management about the age discrimination that was occurring at his Publix location and he was subject to retaliation. There is a causal connection between the protected activity and the adverse employment action due to the short period of time (temporal nexus) that occurred between his later complaints about the accelerated discipline he was facing and his ultimate termination.  To make a prima facie case for retaliation, a plaintiff must show "[(1)] that she engaged in a protected activity, like filing a complaint for discrimination; [(2)] that she suffered a material adverse action; and [(3)] that there was a causal connection between the protected activity and the adverse action."  1) Plaintiff was repeatedly engaged in challenging the ongoing discriminatory language used by Defendant's management teams as well as other agents of Defendant and expressly challenged the pretextual nature of the discipline he received for a handful of minutes worked allegedly off the clock.  2) Plaintiff was ultimately terminated for the pretextual reason of

working a 18 minutes off the clock while they had no proof he was actually working for Publix during this short time.  3) The short temporal nexus between Plaintiff's complaints and the pretextual termination easily demonstrate the retaliatory nature of the firing.  Further Plaintiff was terminated for such absurd grounds when compared to comparators of a younger age, it is clearly in connection to Plaintiff's defense of himself against the targeted ageism.  As such Plaintiff has met his prima facie case.

34,    The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

35.    Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

36.    The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

37.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's retaliatory practices unless and until this Court grants relief.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a.      Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.      Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, front pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.      Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.      Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

e.      Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

f.      Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

## COUNT III

### *Age Discrimination in Violation of Title VII*

38.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 23 as if set forth in full herein.

39.    The acts of Defendant by and through its agents and employees, violated Plaintiff's rights against age discrimination under Title VII.

40.    Defendant through its agents in management positions exhibited such discriminatory comments and actions that they were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff. No one outside of Plaintiff's protected class as an elderly worker were openly ridiculed and mocked by Defendant's management team for their age.  Defendant's human resources protected its management team from repercussions from their discriminatory actions.  Moreover, Plaintiff provided multiple exemplars of individuals outside of his protected class as an elderly worker which did not face the accelerated disciplinary actions from Publix for allegedly engaging in what was at most relatively benign errors of judgment by allegedly working off the clock for Publix's benefit.  The comments and actions affected the terms, conditions, and privileges of Plaintiff's employment and ultimately ended in the loss of his position.

41.    The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

42.    Plaintiff has suffered damages as a result of Defendant's illegal conduct toward her.

43.    The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Publix, to deter it, and others, from such conduct in the future.

44.    A plaintiff establishes the prima facie case "by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." Plaintiff has established all four prongs as he is 1) clearly within the suspect class of elderly workers, 2) that he was subjected to discriminatory actions described above which ultimately led to his pretextual termination, 3) that he has twelve years of experience in the job and other similar positions within Publix and received at or above average marks and 4) that other younger individuals were not

subjected to the same discrimination as one individual had tens of thousands of hours not on the clock and was not terminated which he had a grand total of allegedly forty six minutes over months.

46. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, front pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter judgment against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been

discriminated against by Defendant, or in lieu of reinstatement, award front pay;

e.  Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

f.  Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

## COUNT IV

### *Retaliation in Violation of Title VII*

47.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 23 as if set forth in full herein.

48.    The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against retaliation under Title VII.

49.    The Defendant pretextually terminated Plaintiff's employment, after he engaging in statutorily protected activity of complaining to human resources and upper management about the age discrimination that was occurring at his Publix location and he was subject to retaliation. There is a causal connection between the protected activity and the adverse employment action due to the short period of time (temporal nexus) that occurred between his later complaints about the accelerated discipline he was facing and his ultimate termination.  To make a prima facie case for retaliation, a plaintiff must show "[(1)] that she engaged in a

protected activity, like filing a complaint for discrimination; [(2)] that she suffered a material adverse action; and [(3)] that there was a causal connection between the protected activity and the adverse action." 1) Plaintiff was repeatedly engaged in challenging the ongoing discriminatory language used by Defendant's management teams as well as other agents of Defendant and expressly challenged the pretextual nature of the discipline he received for a handful of minutes worked allegedly off the clock. 2) Plaintiff was ultimately terminated for the pretextual reason of working a 18 minutes off the clock while they had no proof he was actually working for Publix during this short time. 3) The short temporal nexus between Plaintiff's complaints and the pretextual termination easily demonstrate the retaliatory nature of the firing. Further Plaintiff was terminated for such absurd grounds when compared to comparators of a younger age, it is clearly in connection to Plaintiff's defense of himself against the targeted ageism. As such Plaintiff has met his prima facie case.

50, The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

51.     Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

52.     The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

53.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's retaliatory practices unless and until this Court grants relief.

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

a.     Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.     Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, front pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.      Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.      Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

e.      Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

f.      Grant Plaintiff such additional relief as this Court deems just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff, TOBY VINCENT BERRYHILL, hereby demands trial by jury on all claims triable by right of jury under state or federal law.

Dated this 30th day of March, 2026,

Respectfully submitted,

*Warren J. Pearson, JD*

Warren James Pearson, JD
3562 Four Oaks Blvd
Tallahassee FL 32311

Counsel for Plaintiff
Telephone: (850) 567-6164
E-mail: warpear@gmail.com
Florida Bar No.: 0711578